Robert C. **BISHOP**, Movant

v.

**KENTUCKY BAR ASSOCIATION,**
**Respondent.**

No. 2013–SC–000044–KB.

Supreme Court of Kentucky.

March 21, 2013.

## OPINION AND ORDER

Robert C. Bishop[1] admits that he engaged in professional misconduct by failing to supervise his employees, place client funds in a trust account, and disclose conflicts as a result of his representation. He now moves this Court to impose public discipline in the form of a sixty-one day suspension with thirty-one days of the suspension probated for two years upon the conditions set forth in this order. The KBA does not object to the motion, and the Court determines that the proposed sanction is appropriate.

### I.  KBA FILE NO. 18083.

Bishop learned through James Steadman, a paralegal in his office, that Deborah Griffin had been criminally charged relating to a methamphetamine lab discovered in the home of her parents, Judy and John Gaston. Bishop initiated contact with the Gastons and Griffith through Steadman and agreed to represent Griffith. Griffith was informed by Bishop that his fee would be between $10,000 and $15,000. In order to pay Bishop, the Gastons decided to give property to Bishop. Steadman prepared two quitclaim deeds, and the deeds were signed in April of 2009.

The deeds indicated that the property tax bills were to go to Steadman, rather than Bishop. Without Bishop's knowledge or consent, Steadman removed items from the premises and stored them at another location. Furthermore, Steadman, unknown to Bishop, advised the Gastons that the property would be used to post bail.

Upon learning of Steadman's actions, Bishop prepared a quitclaim deed to return his interest in the Gastons' property and ordered Steadman to quitclaim his interest back to the Gastons, as well. This deed was signed in August of 2009. At no point in the representation did Bishop prepare a written document detailing the fee or the proposed handling of the real estate transfer to cover the fee.

The Inquiry Commission initiated a complaint against Bishop under SCR 3.160(2),[2] resulting in a six-count Charge being issued against Bishop. The Charge alleged violations of: (1) SCR 3.130–1.5(a),[3]

---

1. KBA Member No. 05270; bar roster address, 309 Meadow Lane; Elizabethtown, Kentucky 42701. Bishop was admitted to the practice of law on October 1, 1974.

2. SCR 3.160(2) reads, "Notwithstanding the provisions of paragraph (1), when it comes to the attention of the Inquiry Commission from any source that an attorney may have engaged in unprofessional conduct, the Inquiry Commission, or a three-person panel thereof, may initiate and conduct an investigation, and if it believes from its investigation that there is sufficient evidence to justify its filing a complaint against the attorney it may file such a complaint."

3. SCR 3.130–1.5(a) reads, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee in-

by charging an unreasonable fee for legal services; (2) SCR 3.130–1.8(a),[4] by acquiring an ownership in the interest in the Gaston property; (3) SCR 3.130–5.3(b),[5] by failing to make reasonable efforts to ensure Steadman's conduct was compatible with an attorney's professional obligations; (4) SCR 3.130–5.3(c),[6] by ratifying Steadman's conduct regarding his improper involvement with the client and drafting and recording of the quitclaim deeds transferring property from the Gastons to Bishop and Steadman; (5) SCR 3.130–5.5,[7] by assisting Steadman in presenting himself to the clients as an attorney, when Bishop assisted and allowed Steadman to discuss the case with the clients and advise the clients and allowed Steadman to prepare the deeds in this matter, which were then recorded by Bishop; and (6) SCR 3.130–7.09,[8] by initiating contact with the clients through Steadman.

## II. KBA FILE NO. 18191.

In April of 2009, the Cabinet for Health and Family Services (Cabinet) received allegations that Gabriel Cruz Castro, a

clude the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."

4. SCR 3.130–1.8(a) reads, "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction."

5. SCR 3.130–5.3 reads, in pertinent part, "With respect to a nonlawyer employed or retained by or associated with a lawyer: ... (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."

6. SCR 3.130–5.3 reads, in pertinent part, "With respect to a nonlawyer employed or retained by or associated with a lawyer: ... (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer only if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."

7. SCR 3.130–5.5(a) reads, "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so."

8. SCR 3.130–7.09(1) reads, "No lawyer shall directly or through another person, by in person, live telephone, or real-time electronic means, initiate contact or solicit professional employment from a potential client unless: (a) the lawyer has an immediate family relationship with the potential client; (b) the lawyer has a current attorney-client relationship with the potential client; or (c) the lawyer is advocating a public interest issue and is not significantly motivated by the lawyer's pecuniary gain."

friend of Rhonda Call Doogs, kissed and touched Doogs's two minor children. Castro was living with Doogs at the time. Doogs hired Bishop to help her in the case with the Cabinet and paid him an initial fee of $1,000. Additionally, Bishop was retained by Castro in the same matter and also paid $1,000. Doogs was unaware of the relationship between Castro and Bishop. Further, Doogs was not advised of this relationship and the conflict created by the dual representation.

At the beginning of the representation, Bishop introduced Doogs to Steadman. Doogs maintained that the allegations against Castro were false, and Steadman presented himself to Doogs as if he were an attorney. In fact, Steadman advised Doogs that she, Castro, and the children could remain in contact with one another as long as it was in public. Further, Steadman advised Doogs not to cooperate with the Cabinet.

As the representation progressed, Bishop failed to respond to telephone calls from Doogs requesting information about the case. Doogs later paid Bishop an additional $5,000 for the representation. Bishop did not place the check in a proper escrow account, choosing instead to cash the check. Bishop's performance in the representation did not earn the entire advance fee. Doogs requested a refund of any. unearned fees, but Bishop was unable to provide a refund at that time. A bar complaint was later filed by Doogs.

The Inquiry Commission issued a six-count Charge against Bishop. The Charge alleged violations of; (1) SCR 3.130–1.4(a),[9] by failing to respond to his client's requests for information; (2) SCR 3.130–1.7(b),[10] by representing multiple clients with a prohibited conflict without obtaining proper consent after consultation of his client; (3) SCR 3.130–1.15(a),[11] by failing to deposit the advance fee payment into his escrow account; (4) SCR 3.130–

**9.** SCR 3.130–1.4(a) reads, "A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and. (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law."

**10.** SCR 3.130–1.7(b) reads, "Notwithstanding paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding

before a tribunal; and (4) each affected client gives informed consent, confirmed in writing. The consultation shall include an explanation of the implications of the common representation and the advantages and risks involved."

**11.** SCR 3.130–1.15(a) reads, "A lawyer shall hold properly of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client, third person, or both in the event of a claim by each to the property. The separate account referred to in the preceding sentence shall be maintained in a bank which has agreed to notify the Kentucky Bar Association in the event that any overdraft occurs in the account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

1.16(d),[12] by failing to return the unearned advance fee payment upon termination of the representation; (5) SCR 3.130–5.3(b) and (c), by failing to properly supervise Steadman; and (6) SCR 3.130–5.5, by assisting Steadman in the unauthorized practice of law.

### III. ORDER.

Bishop has admitted professional misconduct by violating the cited Kentucky Supreme Court Rules for each Charge issued by the Inquiry Commission in this matter. Under SCR 3.480(2), Bishop and the KBA have further agreed to the imposition of discipline and now ask this Court to impose the agreed sanction. After reviewing the record, the standards, and other relevant authorities, this Court concludes that the discipline proposed by Bishop is adequate. Accordingly, the Court ORDERS:

A) Robert C. Bishop, KBA Member No. 05270, is guilty of all charges alleged in KBA File Nos. 18083 and 18191;

B) Bishop is immediately suspended from the practice of law for a period of sixty-one days with all but thirty days of the suspension probated for a period of two years on the condition that Bishop: (1) must not receive any further disciplinary charges for two years, and (2) must attend and successfully complete, at his own expense, within twelve months of the date of the entry of this order, the Ethics and Professionalism Enhancement Program offered by the Office of Bar Counsel (OBC). Bishop will not be allowed to apply for CLE credit of any kind for this program and must furnish a release and waiver to the OBC to allow the OBC to verify he has not reported any such hours to the CLE Commission;

C) If Bishop fails to comply with any of the terms of discipline as set forth in this order, upon the OBC's motion, the Court will impose the remaining 31–day period of suspension, which will result in a total suspension of 61 days and require client notification under SCR 3.390;

D) Bishop must pay restitution to Rhonda Doogs in the amount of $2,500.00, representing the unearned portion of the advance fee payment, within 120 days of this order; and

E) In accordance with SCR 3.450, Bishop must pay $111.48, the cost associated with this proceeding, for which execution may issue from this Court upon finality of this order.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur.

ENTERED: March 21, 2013.

/s/ John D. Minton, Jr.
  Chief Justice

---

**12.** SCR 3.130–1.16(d) reads, "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."